Number 11-2351, Ms. Gerlach and Mr. Ivory. Take your time, no urgency. Whenever you're ready, Ms. Gerlach. Thank you. May it please the court. I am Karen Sirianni Gerlach and I represent the appellant, Mr. Ricardo Marrero. I would ask the court's permission to reserve three minutes of rebuttal time. It's fine. Thank you. Your honors, neither of the two... This doesn't have anything to do with taxes, does it? Nothing. Good. Thankfully, neither of the two prior convictions used to qualify Mr. Marrero as a career offender constitutes a crime of violence. However, if this court finds that even one of the prior convictions does not constitute a crime of violence, then Mr. Marrero should not have been sentenced as a career offender. You start off with a statute that has, you know, the murder in the third degree, that has a, you know, intentional, knowingly, recklessly, and... Excuse me, your honor, I believe you mean the simple assault. I'm sorry, that's right. What is the statute? Well, let's go to the murder in the third degree. What does the statute say there explicitly? It states explicitly murder of the third degree is all other kinds of murder, and murder of the third degree is a felony of the first degree. It is the case law, however, which goes on to define the elements of the offense in more detail, and in defining those elements, the Pennsylvania state case law says that malice is a necessary and required element of third degree murder. Malice involves recklessness, and then we jump back to our federal case law. But doesn't, before we go, I mean, your adversary points out that it's a different type of recklessness. It's a different animal altogether. It happens to be the same word, but they're talking about something different. How do you respond to that? Within the Pennsylvania case law, there is a gradation and a distinguishing of degrees of recklessness. But under our federal case law, which controls how we view this, there is no gradation. And yes, in Begay and the Progeny, it talks about, quote, mere recklessness. But from reading that case law, we see that what the federal case law talks about is recklessness standing alone. They are not grading it or giving degrees of it. And, in fact, in the Johnson case out of this circuit, when the government and the Department of Justice conceded that recklessness does not constitute a crime of violence under Begay and that analysis, they say mere recklessness and then go on to qualify that as being recklessness standing alone. All right. But before we even figure out how to slice recklessness or whether to slice recklessness, isn't it true that Begay was a residual clause case? It is. And this is – excuse me. Is there any support for applying Begay to enumerated offenses such as this one? Yes. Stinson, the Supreme Court case cited in my brief, which talks about the impact of the application notes, says that, yes, application notes are accorded great weight and they are controlling as long as they don't conflict with the guideline itself. Here, the application note 1 does conflict with the body of the actual guideline for B1.2a. And if I may explain that in more detail. Sure. 4B1.2a gives some enumerated offenses, arson, burglary, extortion, explosive offenses. This is clearly not one of those four enumerated offenses. But the commentary to 4B1.2 includes murder. Yes. May I finish, please? I just need to carry the analysis through. I don't mean to be impolite, Your Honor. No problem. After we see that it's not one of the four enumerated offenses in 4B1.2a, we know that it's under the residual clause. So how do we interpret the residual clause? That's clear from Begay and the progeny. It's progeny. It must be purposeful, violent, and aggressive. It can't be recklessness. Let me cut you off for a minute because I think you're making a very important point. You're saying this is a residual clause case because enumeration with an application note doesn't cut it. It would have to be enumerated explicitly in the guideline itself? It's okay if it's enumerated in the application note as long as it doesn't conflict with the guideline. It does conflict with the guideline here because Begay and the progeny tell us how to interpret the residual clause, and they tell us that recklessness doesn't cut it under the residual clause. Third-degree murder, I'm not saying all murders in all states, but third-degree murder in Pennsylvania law does conflict because it has a reckless element. You made no argument that I could see in your brief regarding the definition of generic murder. Isn't that essential to this analysis? Not necessarily, Your Honor, because we have to look under the categorical approach. We really begin and end with the elements of our statute that we're dealing with, the Pennsylvania third-degree murder statute and what it requires. And they talk, I think it's the Smith case in the Seventh Circuit, which this court cites in a lot of its decisions. It doesn't have to be that the state crime or the prior conviction crime is in every instance a crime of violence or not. We are just looking at the typical case, and it's the typical case of Pennsylvania, and that requires merits. Don't we have to, in the cases I've read, they always go through, they look to the model penal code typically, and they ascertain what the generic definition of the crime at issue is here, murder. But he didn't plead to a generic definition of murder. He pled to the Pennsylvania third-degree murder. But the Pennsylvania third-degree murder is consistent with the penal code, and it seems to fit the generic definition, doesn't it? Well, then that would mean only that the commentary in general, then, with regard to third-degree murder would conflict. And the government's argument that it does not conflict is based on their argument that there's gradations and degrees of recklessness. But as I argued earlier, that is not what Begay and its progeny say. Are there any cases that support what you argued, that the enumeration of murder in Application Note 1 conflicts with the language of 4B1.2a? Not with murder, but Stinson in general talks about conflicts, and that's what I was relying on. Also, the Wood case out of the Seventh Circuit, they don't specifically talk about conflict, but manslaughter is an enumerated offense under the Application Note. And in Wood, the Seventh Circuit found that that was not a crime of violence, despite the fact that it was enumerated. So it's not the precise analysis, but it does give us support. How about under Pennsylvania? Is manslaughter something that would be covered? Manslaughter in Pennsylvania, let me think about this now. Voluntary is when there's sudden heat of passion and provocation, and the example of that would be if someone walks in on their spouse and catches them in a compromising position and says, I'm going to kill you, and in that sudden instance does. I don't think it has a recklessness component to it, so I don't think that manslaughter would be covered.  Well, that's just my point. Then how could third-degree murder, which is sort of one-up. One-up, ratchet it up. Different elements, recklessness, and that's just a quirk in how the Pennsylvania legislature defined the crimes, that one requires recklessness and the other does not. And the government also made an argument that following our position that we suggest does away with involuntary manslaughter, and I don't understand that because they are separate crimes and the elements are so distinct. But the facts here are you had a person who was, in effect, beat to death. Yes. And so the persons involved, including Mr. Marrero, are in charge with third-degree murder. And that's not manslaughter. I know what you're saying, that if you're, in effect, relying on the literal words because the words of the statute include recklessly, but that's now where I do come to the point I'd asked about before. The commentary to 4B.1.2 includes murder in its specific offenses that qualifies crimes of violence. And this is, whether it's murder one, murder two, murder three, it's still murder. And in Pennsylvania law, it's more than manslaughter. And manslaughter itself is referred to in the commentary, is it not? It is. It comes right after murder. But with involuntary, excuse me, voluntary manslaughter under Pennsylvania law, there is an intent, which is not present in third-degree murder. And I think that it's, as I said earlier, it's a quirk in the Pennsylvania law, and it should not, I don't think an evaluation of voluntary manslaughter should affect the analysis here. But back to Judge Hardiman's question, the point that you're making comes into play if you reach the residual clause. Yes. Do you really reach the residual clause here? Yes, because it's not one of the enumerated offenses under 4B.1.2a. But the commentary refers to it specifically. But we have to look at the guideline first. And as Stinson teaches us, the commentary is always subordinate to the guideline itself. And Begay tells us how to define the residual clause. I think your premise is correct, as I understand it. Your premise is that when an application note contradicts or conflicts with the guideline, guideline trumps. Yes. That's your premise, right? Yes. But I'm having trouble understanding why there's a conflict because murder just is not mentioned, right, in 4B.1.2. The fact that it's an unmentioned helped me get from it being unmentioned to being a conflict. Because there's an or before the residual clause. And then to define the residual clause, we look to Begay, which says purposeful, violent, or aggressive. And then the progeny elaborate on that and say not recklessness. Then we look at the elements of third-degree murder, and we find recklessness. When you carry through with the guideline analysis and interpreting the guideline before you go to the application note, that's all established. And then you have this application note that says murder. And in the context of third-degree murder in Pennsylvania, it conflicts. All right. What courts of appeals or district courts have written in support of that position? Well, there's, as I said, nothing specific on this crime, but just the generic. Any of the enumerated crimes in Note 1 that are not enumerated in the guideline itself. I mean, this comes up all the time. Lord knows we all have our fill of career criminal cases, and it's very complicated because of the interplay between the federal recidivism approach and all of these intricacies of state law, which are so well articulated. So there have to be some cases out there where courts have said that the enumerated offense, what I'm referring to as an enumerated offense in application Note 1, but pick any of the other ones where courts have held that those enumerated offenses conflict with 4B1.2A. I would have to do a supplemental brief on that, to be honest, because there are several enumerated crimes, and I would have to look up each one, and I'd be happy to do that. But all you know standing here now is that there aren't any cases you're aware of on murder, because that was what you focused on because this is a case of all of them. Yes, exactly. Are there any cases going the other way? Not that I know of. Well, let me think. No, no. The government's cases, they all dealt with grading, the recklessness, and they were Pennsylvania State cases. So no. Okay. Why don't we just turn? Well, I'll tell you what. We'll get you back on rebuttal, and we'll deal with the simple assault. That's what I was going to say. May I have time to address the simple assault? We'll deal with that on rebuttal then. Okay. Thank you. We'll give you extra time there. Thank you. Mr. Ivory. Good morning. May it please the Court, my name is Mike Ivory. I'm an assistant U.S. attorney, and I'm from Pittsburgh. There are several – well, there are three ways to evaluate the issue of whether or not murder in the third degree constitutes a crime of violence. Judge Ambrose, earlier, the first argument you referenced is sort of Damocles. I think that maybe this Court ought to shave with Occam's razor in addressing the first issue. Murder is specifically listed in the commentary as a crime of violence. I can't think of a crime that is more violent than the intentional taking of the life of another human being. How do you deal with recklessness? That's what her point is. I'm sorry, Your Honor? How do you deal with recklessness? That's your adversary. There are different gradations of recklessness recognized in the Pennsylvania courts. This Court, in a non-presidential opinion, addressed the issue of whether or not the crime of involuntary manslaughter, which is a lesser-included offense of third-degree murder, constitutes a crime of violence, and it held that it did. And the name of the case is Hernandez-Rojas. I do not have the citation with me. Again, it is referenced, though, in one of the footnotes of my brief. In that case – That was under Pennsylvania law, right? Yes, Your Honor. Okay. In that case, Hernandez-Rojas, the recklessness at issue was gross recklessness. Pennsylvania courts recognize that the recklessness necessary to sustain a conviction of a third-degree murder could constitute legal malice is far greater than gross or just regular recklessness. So it's important because if this Court is going to not apply the Occam-Grazer's approach, which is the simplest answer to what is, I don't think, the most complicated question confronting this Court today, but clearly the commentary is binding on the courts unless it conflicts with the guideline itself. So you agree with Ms. Gerlach's premise in that regard? Which is which? The guideline – when commentary conflicts with guideline, guideline trumps. Well, that's what the Supreme Court and this Court both instruct. However, I think – Tell us why she's incorrect when she argues there's a true conflict here. There's not a true conflict because the sentencing commission issued the commentary indicating what it believed to be crimes of violence. There are 10 enumerated offenses. And I think that whenever you consider those crimes that are delineated in a common-sense fashion, clearly they're crimes of violence. I mean, several of them are simpatico with the enumerated offenses contained within the body of the guideline themselves, but they've expanded. You know, if only Congress had done the same thing with respect to the Anchor Criminal Act, I think this question would not be as complicated. Well, why wouldn't the commission have just amended 4B1.2? I mean, it is sort of a strange way to run a railroad to just put these things into the commentary rather than just amending the guidelines, isn't it? Yeah, I can't speak as to how the sentencing commission operates, Your Honor, but I do think that whenever you consider what is a crime of violence, I mean, murder is the most violent crime of all. It results in the intentional taking of the life of another. But if this – I won't deny that your argument has some common-sensical appeal, certainly to the layperson. The problem is we're dealing with some very intricate issues, and, you know, read the dissent in Begay. I mean, there are a lot of deaths involved in DUIs, right? But we're told that recklessness doesn't cut it. So if this is a residual clause case, you've got a problem, as I see it, because there aren't any Shepard-approved documents for us to look at that gets you out of the bind that Begay puts you in. I think the Supreme Court gets us out of the Begay bind in the Sykes v. United States, the case that was decided this summer in which the Supreme Court more or less restricted or refined the scope of the Begay inquiry to crimes where the mens rea is negligence, mere recklessness, and I believe are strict liability offenses. So you're saying even if this is a residual clause case, the mere recklessness is a gloss on Begay's recklessness, and we're supposed to infer then that, well, we have to ask the question, then, is murder under Pennsylvania law involved in recklessness or mere recklessness? What we do under Sykes, Your Honor, and neither of us cited Sykes in our brief, and I can assure the Court that it was more a sin of omission on my part than one of commission. But what happened in Sykes is the Supreme Court, under Begay, whether or not a crime is a violent felony, you have to look to see whether or not the predicate felony is violent, purposeful, or involves aggressive conduct. Now, in Sykes, the Supreme Court restricted the Begay inquiry to crimes where the mens rea is based upon strict liability, mere recklessness, or negligence. All other cases which you have to do, all other predicate felonies, you more or less have to conduct what the courts have referred to as a risk analysis. So you look at the risks inherent in the enumerated felonies, arson, burglary, use of explosives, and extortion, and compare the risk involved in the predicate felony with the levels of risk involved with the enumerated felonies. Well, if you look at three of the enumerated felonies, arson, burglary, and using explosives, I think the risks that are inherent in those crimes would be that there is a substantial likelihood that someone's going to get hurt or die. So when you look at the risks involved in murder, somebody's dead. So clearly under Sykes, and I think that Sykes would apply in this case because the recklessness necessary for third-degree murder is far above mere recklessness. The Pennsylvania Supreme Courts have repeatedly held that mere recklessness cannot sustain a conviction for third-degree murder. The courts in Pennsylvania have also held that the scientists... If I may. Commonwealth v. Scales is one. That's at 648 Atlantic 2nd, page 1207, a Superior Court decision from 1994. Commonwealth v. Aurek, A-U-R-I-C-K, 19 Atlantic 2nd, page 921, Supreme Court from 1941. Commonwealth v. Fierce, 620 Atlantic 2nd, page 1203. And to quote, I mean, where malice is based... Pennsylvania, this is at page 21 and 22 of my brief. Quote, where malice is based on the recklessness of consequences, it is not sufficient to show mere recklessness as codified at 18 Pennsylvania Code section 302B3, but rather it must be shown that the defendant consciously disregarded and unjustified an extremely high risk that his actions may cause death or bodily harm. Serious bodily harm. So, you know, the type of recklessness is not the type of recklessness that's involved in simple assault, and it's certainly not the type of recklessness that's involved in involuntary manslaughter. Rather, it is a higher degree of recklessness. The Pennsylvania courts have consistently held that. We are not talking about mere recklessness under Sykes. Mere recklessness must be evaluated whether or not it's violent, purposeful or aggressive conduct. All other crimes you have to apply the risk assessment vis-a-vis the predicate felony in connection with the four enumerated felonies contained both in the sentencing guidelines and by extension in the Armed Career Criminal Act. And what's your view? Ms. Gerlach didn't seem to agree that we would look to the generic definition of murder. What's your view on that? Well, as I indicated in my brief, one of the reasons in determining what the generic view is, you have to look at the case law in other courts as well as the model penal code. I don't think we need to get to that issue today. You agree with her that that's not an enterprise we need to engage in to decide the case? Again, I don't think so. I did set forth an analysis in my brief detailing how the recklessness in Pennsylvania for third-degree murder is simpatico with the gradations of the mens rea necessary to sustain murder in the model penal code. But again, I don't think that it's necessary to reach that issue. I think that the straightforward approach would be the commentary does not conflict. I mean, the purpose of the commentary is to elaborate or to refine what is involved in the guideline. The guideline deals with the crime of violence. I mean, murder is a crime of violence. There's no getting around that fact, except if someone's killed with kindness, but then those kind of cases aren't prosecuted typically. So all murders involve violent intentional conduct that results in the death of another individual. You know, the issue that we have here is what is the mens rea? And the courts in evaluating these claims typically have to determine what the scienter is under state law. That's been done by this court and done by every district court that has to deal with this issue. In this case, the scienter for third degree murder is malice. And if you look at the way that the Pennsylvania courts describe. So you're saying if it's recklessness, it's recklessness plus with a malice element, which distinguishes it from simple recklessness. That's correct, Your Honor. And when we're dealing with malice, you know, the old Pennsylvania's third degree murder is really one of the constructs that we think of is that it's depraved indifference. I mean, when you look at the jury instructions that a court gives in the court of common pleas for third degree murder, the juries are routinely instructed that it has to be a killing with malice. And malice consists of wickedness of disposition, hardness of heart, recklessness of consequences. So it's not even mere, it's not even recklessness. It's recklessness of consequences and a mind regardless of social duty. I mean, the courts of the Commonwealth have been using that formula for close to 100 years to describe the requisite degree of malice that has to be. I was actually going to ask him to move on to simple assault. That is a residual clause issue, right? That is a residual clause issue. And, you know, in this case, it's the statute that is capable of being committed in four different ways. Recklessness, negligent, knowing or intentional. This court held in Johnson that if it's negligent or reckless, it is not a crime of violence. If it's knowing and intentional, it is a crime of violence. In this case, the government provided consistent with the Supreme Court's decision in Shepard. And you can see in this case that neither the sentencing court nor the prosecution specified the particular type of violation. That is correct. And I think, though, however, what you have to look at and consider at page 70 of the appendix is what are the facts to which Mr. Marrero assented. And he agreed with the assistant DA's summary that, you know, he placed... Grabbed her by the neck and tried to drag her upstairs. Dragged her upstairs. And I mean, you know, when I was preparing for the argument, I was trying to think of how can you negligently grab someone by the neck and drag them upstairs? Or how can you recklessly do that? You can't. I mean, what he did was violent, knowing, and intentional. And as such, it is a crime of violence under this court's decision in Johnson. So, you know, I think that that ends the inquiry. And I don't think that the district court engaged in independent fact-finding. I mean, it looked at the transcript and it saw that Mr. Marrero agreed that he had knowingly and intentionally grabbed his wife around the neck on two separate occasions. And I think on one of those occasions, he also threatened her with physical harm. On another, whenever she had the merity to call 911, he rips the phone out of the wall. So, you know, and there was one other thing that I would like to note. Mr. Marrero was not really sentenced as a career offender. He got 96 months. He got 96 months. And, you know, this is an individual who killed a person. And it's beside the point. Right, it is beside the point. It's beside the point. Those atmospherics might be useful to the jury. That's true. We've got to look at the law. I know. I do appreciate that. All right. So if there are no other questions, I would simply ask that the court affirm the judgment of conviction sentence. Thank you. Thank you. Ms. Gerlach. Thank you. Roberto, make that five minutes as opposed to three. Thank you. You're allowed, under the Pennsylvania simple assault statute, for the second one, which you're going to address now. The government noted that it wasn't mentioned which type of crime we're talking about here. But you have the plea colloquy. Yes. And there was nothing disagreed to by Mr. Marrero with the plea colloquy, was there? No. So under Shepard, we can take into account, can we not? No, we cannot. We cannot under Shepard? We cannot. Shepard says that we can look at the document where there were factual findings. But the case law is replete with statements saying that the modified categorical approach is not carte blanche to start looking at the facts. When do you look at the facts, then? You don't. The key with the modified categorical approach is which, not how. Which elements of the statute did the defendant plead to, not how did the defendant violate the statute? Your Honors, I would submit that if the prior offense in this Court's Johnson decision was not a crime of violence, there is no way that this one could be either. In Johnson, we had an information that this Court acknowledged, I think it was in a footnote, saying that the defendant choked, quote-unquote, the mother of his children. We also had in a footnote the PSR, quotations from the PSR, saying that he threw... The PSR is not a Shepard-approved document. It is not. That's where the rubber meets the road. If it's a Shepard-approved document, it's coming in, and if it's not, it's not. And if here we had a sentence, if all we had here was a transcript, a docket entry that said, Marrero, simple assault, you have a slam-dunk victory because then we look to the least culpable way it can be violated. But we have more than that here. As Judge Amberle adverted, we have a plea colloquy. And that is a Shepard-approved document, a plea colloquy. The reason I note the PSR, Your Honor, you are correct. It is not a Shepard-approved document. But this Court said in a footnote that there were these ugly facts, that he hit his wife in the head with a candlestick. And there was no objection to that factual recitation in the PSR. And this Court said it looks as if this is not going to be a reckless or negligent offense. It's going to be knowing and intentional. But Shepard says the district court can consider, quote, any explicit factual finding by the trial judge to which the defendant assented, close quote. To see within that if there is a mention of the elements in that case law also says. But isn't that what Marrero effectively did here? I'm sorry? Isn't that what happened here? The prosecutor read the facts. Sentencing judge asked Marrero if he admitted those facts. And Marrero said, quote, yes, sir, close quote. He needed to have said the elements of the offense, though. So you're saying short of saying intentionally or knowingly, it's. Or recklessly, yes, it is. And this Court found that in the unpublished decision that the government cites, it was. So it sounds like you're saying, go ahead, why don't you finish and I'll ask my question next. I'm sorry, Your Honor? Go ahead, you can finish and then I'll ask my question next. Okay, Shelton, which is an unpublished decision. And this Court found in an opinion authored by a member of this panel that the plea colloquy was adequate because in the simple assault case, they specified the district or the, excuse me, the state court trial judge specified knowing and intentional and didn't make any mention of the word reckless. And that was found to be adequate. Well, that doesn't mean you have to raise that, you have to reach that bar for it to be adequate. You do, Your Honor. Your Honor, I hope this doesn't sound flippant, but the government spends a lot of time in its brief saying that we're asking for magic words and we're asking that every plea colloquy in state court mention a statute section or, if not, the formal numbering or the elements. I don't think that that's unreasonable. Even if these state court convictions don't come back to haunt a defendant in federal court under recidivism statutes, it is just good practice and even a constitutional requirement to say in the plea colloquy what the defendant is pleading to, especially where you have a statute such as the Pennsylvania simple assault statute, which covers a myriad of different kinds of conduct. It would certainly be preferable to having to make legal conclusions from the facts found by the state judge, but that's not yet required by the Supreme Court. It's required just in that a defendant has a right to know what he's pleading to. That's just basic good practice in that a defendant has a right to know which elements of the offense he's pleading to. When the government says it's too much, it just sounds whiny to me because – and I'm sorry, that's the part I didn't want to sound flippant – because I think it's not asking too much. Even Mr. Ivey is taking humor in what he's saying. No offense intended. But I think it's just good practice and it's something that a defendant is entitled to. When I read that, I chuckled because I think a defendant is entitled to know what the elements of the offense are, even if this is not coming back to haunt. In sum, they say over and over in the case law, it's what the defendant pled to, not how the defendant violated the statute. We don't know what he pled to from this plea column. But Shepard's a way to try to get you to figure out how or what actually the defendant pled to. I agree that the case law is a little slippery, Your Honor. You mentioned that they say the facts. But I think taking it in conjunction with the statements that say this is not a way to run around the categorical approach and just have carte blanche look at the facts, I think qualifies that. And in Johnson, this court remanded and the simple assault was found not to be a crime of violence, even with very, very ugly facts that are recounted in the Johnson opinion in footnotes. And so I would urge this court, again, to look at the which and not the how. And the which is absent. We don't know which section he pled guilty to, so we must rely on the least culpable offense. Just two quick points outside of the simple assault. Mr. Ivory is correct. He cited a case in a footnote saying that murder or manslaughter, I guess it was, is a crime of violence. I dismissed that case because it was in the context of a different guideline, 2L1.2. It wasn't this whole career offender ACCA. So I think the analysis is different. Yes, Mr. Marrero was not sentenced within the career offender range of 151 to 188 months. He received 96 months. The career offender range is 57 to 71. And if the guideline range is incorrectly calculated. You mean the non-career offender? I'm sorry? You mean the non-career offender? Non-career offender. If the guideline range is improperly calculated, that's procedural error and it can't be ignored. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement. We'll take a five-minute break.